# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

BARBARA ANN SNYDER,

    Plaintiff,

    v.

BELMONT COUNTY
SHERIFF'S DEPARTMENT, et al.

    Defendants.

Case No. 2:08-CV-111

JUDGE ALGENON L. MARBLEY
Magistrate Judge Abel

## OPINION & ORDER

## I. INTRODUCTION

Plaintiff Barbara Ann Snyder ("Snyder") brings this action against the Belmont County Sheriff's Department ("Sheriff's Department"), Fred A. Thompson, individually and in his official capacity; Allen G. Porter, individually and in his official capacity; Joseph C. Hummel, individually and in his official capacity; and the Belmont County Board of Commissioners ("Board"). Snyder's claims stem from her prior employment at the Sheriff's Department and include: retaliation and sex discrimination claims under Title VII; retaliation and sex discrimination claims under Ohio Revised Code Ann. § 4112 *et seq*; a parallel Fourteenth Amendment Equal Protection Clause claim; a negligent retention claim; intentional infliction of emotional distress claims; and a bad faith breach of contract claim. Defendants Sheriff's Department and the Board (collectively "Defendants") now move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is **DENIED in PART and GRANTED in PART**.

## II. BACKGROUND

### A. Factual Background

These facts were drawn from the Complaint and the briefs on Defendants' Motion to Dismiss. Snyder worked for the Sheriff's Department from 1996-2007. She started as a part-time jailer and was promoted to Sergeant in 2000. Snyder claims that during her employment she had a good work record, was qualified for her position, and performed her job duties satisfactorily. While she worked at the Sheriff's Department, Snyder was supervised by Joseph Hummel ("Hummel"), who was a Chief Deputy or Assistant Jail Administrator, Allen Porter ("Porter"), who was a Jail Administrator, and Fred Thompson ("Thompson"), who was the Belmont County Sheriff during the time period relevant to this case. According to Snyder, the Board serves as the general administrative body of Belmont County, Ohio and employed or oversaw the Sheriff's Department and the individually named Defendants.

In 2004, Snyder filed a sexual harassment complaint against Porter. After an independent investigation, the complaint was found to be justified. When Thompson was elected sheriff in January 2005, he fired Porter. However, within a brief period of time, Thompson rehired Porter. Snyder claims that after Porter was re-hired, he subjected her to a pattern of retaliation, mistreatment, harassment, and other improper conduct. Snyder alleges that she told Hummel and Thompson about Porter's behavior.

In 2007, the FBI began to investigate the Sheriff's Department regarding a claim that Sheriff Department employees had used excessive force on a former inmate. Thompson put Snyder on paid administrative leave during the investigation. When the investigation cleared Snyder of any wrongdoing, she was still kept on administrative leave.

During the course of the investigation Snyder recorded a conversation with the complaining inmate in which he said that Sergeant Beckett ("Beckett") was responsible for the abuse and that he had been coached to say that it was Snyder who was working at the time of the incident. Snyder submitted a written statement about her conversation with the inmate to Porter and turned the tape recording over to the FBI. Nevertheless, Beckett was only placed on administrative leave after Snyder took the tape recording to the Sheriff's Department to be heard by the defendants and a Human Resources Representative.

During the course of the FBI investigation, Snyder claims that the defendants treated her differently from Beckett, a similarly situated male employee, in several respects. She states that she was not permitted to return to work after the FBI cleared her while Sergeant Beckett continued work after the defendants' knew of the allegations of abuse. Also, Thompson required Snyder to return her County issued property during her suspension but did not require Beckett to do so. Finally, Beckett was allowed to retire early in order to avoid the allegations against him while Snyder was charged with twelve counts of misconduct.

On June 8, 2007, Snyder was discharged from the Sheriff's Department for "gross misconduct." She alleges that this was only a pretext for retaliatory and discriminatory motives. Snyder claims that the defendants treated her differently from similarly situated male employees. She also states that of the four employees terminated as a result of the FBI investigation, the two female employees, including herself, were summarily fired while the male employees were given the chance to retire or resign in lieu of termination.

### B. Procedural History

Within a month of being fired, Snyder lodged her complaint with the Ohio Civil Rights

Commission and the Equal Employment Opportunity Commission. On January 24, 2008, the United States Department of Justice gave Snyder a Notice of Right to Sue. On February 6, 2008, Snyder filed a complaint in the United States District Court for the Southern District of Ohio. The Sheriff's Department and the Board responded with a Rule 12(b)(6) Motion to Dismiss (Doc. 7). That Motion was mooted when Snyder filed an Amended Complaint on May 12, 2008. However, the Sheriff's Department and the Board re-filed their Motion to Dismiss (Doc. 23), responding to the Amended Complaint, which is now before the Court.

### III. STANDARD OF REVIEW

A case may be dismissed if the complaint does not state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, __F.3d __, 2008 WL 5273309, at *3 (6th Cir. Dec. 22, 2008)*; Murphy v. Sofamor Danek Gp.,Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).

Although liberal, this standard requires more than the bare assertion of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Under the federal pleading requirements, a plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'"

*Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007)). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007).

## IV. LAW & ANALYSIS

### A. Defendant Belmont County Board of Commissioners

The gravamen of Snyder's complaint against the Board are Title VII, Equal Protection Clause, and Ohio statutory retaliation and sex discrimination claims.[1] The Board alleges that it is not a proper party to the suit and must be dismissed from the case because it was not involved in the hiring or employment of the other defendants and had no involvement in or authority over the matters in the Complaint . The Board argues that Hummel, Porter, Thompson, and Snyder were all employed solely by the Sheriff's Department and thus, all of Snyder's claims are premised on the erroneous belief that the Board had an employer relationship with those parties. In support of its position, the Board cites several provisions of the Ohio Revised Code, which state that: (1) the Belmont County Sheriff is an elected official, Ohio Rev. Code § 311.01; and

---

[1] Snyder also has two common law tort claims against the Board for negligent retention and intentional infliction of emotional distress. These claims also hinge on the existence of an employer relationship between the Board and Hummel, Porter, Thompson, and Snyder. Claims for negligent retention under Ohio law require plaintiff to prove the existence of an employment relationship. *Shoemaker-Stephen v. Montgomery County Bd. Of Comm'rs*, 262 F.Supp.2d 866, 886-87 (S.D. Ohio 2003). An intentional infliction of emotional distress claim will only lie where "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Id*. at 888 (internal quotations marks omitted). Snyder's complaint alleges that Hummel, Porter, and Thompson engaged in outrageous conduct while acting as agents of the Board. (Am. Compl. 13.) Thus, while not explicitly requiring proof of an employment relationship, her intentional infliction of emotional distress claim is predicated on the existence of a relationship between the Board and Hummel, Porter, and Thompson.

(2) the Belmont County Jail Administrator and the Deputy Sheriffs are appointed by the Sheriff, Ohio Rev Code § 341.05 (A)(1); §311.04.[2]

Snyder counters that she has pled that the Board is an employer as defined by Title VII and Ohio Revised Code § 4112.01 *et seq* and has alleged sufficient facts to support her claims against the Board. She further argues that the Board's claim that it "had no involvement or authority over the matters" in the Complaint is a factual allegation that cannot be the basis of a motion to dismiss. Instead, she argues, the Board's claim is more properly raised on a motion for summary judgment, after there has been discovery. The Court agrees.

Title VII prohibits "employers" from discriminating against employees on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Ohio Revised Code Section 4112.02(A) "prohibits the same conduct as a matter of Sate law, and is generally construed in an identical fashion to Title VII." *Shoemaker-Stephen v. Montgomery County Bd. Of Comm'rs*, 262 F.Supp.2d 866, 874-76 (S.D. Ohio 2003) (noting Title VII and Ohio Rev. Code § 4112.01 are construed analogously with the exception of individual liability). Similarly, when, as in this case, 42 U.S.C. § 1983 is used as a parallel cause of action with Title VII, they require the same

---

[2] Section 311.01 reads in pertinent part: "[a] sheriff shall be elected quadrennially in each county."
Section 341.05 (A)(1) reads:
    The sheriff shall assign sufficient staff to ensure the safe and secure operation of the county jail, but staff shall be assigned only to the extent such staff can be provided with funds appropriated to the sheriff at the discretion of the board of county commissioners. The staff may include any of the following: (1) An administrator for the jail.
Section 311.04 reads in pertinent part:
    [T]he sheriff may appoint, in writing one or more deputies . . . the sheriff shall terminate the employment of a deputy sheriff appointed under division (B)(1) of this section if the deputy sheriff does either of the following . . . .

proof to establish liability. *See Risinger v. Ohio Bureau of Workers' Comp.*, 883 F.2d 475, 483 (6th Cir. 1989).

An "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person . . . ." 42 U.S.C. § 2000e(b). "The determination of whether a particular entity is an employer of a Title VII plaintiff involves an examination of whether the alleged employer exercises control over the manner and means of the plaintiffs work." *Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 612 (6th Cir. 2003). To determine if a defendant was an employer, a court will consider the defendant's right to control the means by which assignments are completed, the skills required of the plaintiff, the defendant's right to assign projects and control the method of work, the power to hire and to determine how to compensate the plaintiff, and the tax treatment of the relationship. *Shah v. Deaconess Hosp.*, 355 f.3d 496, 499-500 (6th Cir. 2004).

Snyder has alleged that the Board was her employer "within the meaning of 42 U.S.C. § 2000(e)(b), Ohio Revised Code § 4112.01(A)(2) and other relevant statutory provisions or legal definitions." (Am. Compl. 3.) While this statement in isolation might constitute a "bare legal conclusion" insufficient to preclude a Rule 12(b)(6) dismissal, Snyder also alleged facts in support of her claim that the Board was her employer. Snyder claims that the Board oversaw the activities of all of the individually named defendants, that the Board employed those defendants, that the Sheriff's Department acted under the authority and oversight of the Board, and that the Board approved, ratified or otherwise consented to all of the conduct of the Sheriff's Department and the individually named defendants. (*Id*. 2.)

The Board counters that Snyder was employed as a deputy sheriff by the Sheriff's

Department[3] and points to provisions of the Ohio Revised Code that state that the Sheriff had the direct authority to appoint and fire deputy sheriffs. While those provisions certainly suggest that the Board may not have had an employer relationship with Snyder, they do not preclude a finding that the Board also "exercised control over the manner and means" of Snyder's work. *See Sutherland*, 344 F.3d at 612; *Richardson v. Century Prods., Inc.*, 163 F.Supp.2d 771, 775 (N.D. Ohio 2001) (a Title VII plaintiff may be an employee of multiple companies). If the facts unearthed in discovery support the Board's contention, they may revisit this issue at summary judgment. But, at this stage, taking Snyder's factual allegations as true, the Court declines to dismiss the Board and the Board's Motion to Dismiss is **DENIED**.[4]

### B. Defendant Belmont County Sheriff's Department

The Sheriff's Department argues that it must be dismissed from this suit because: (1) a county sheriff's department is not a legal entity and consequently not subject to suit; and (2) it is inappropriate to name both the Sheriff's Department and Thompson in his official capacity as Belmont Count Sheriff as defendants because Snyder's claims against Thompson in his official

---

[3] Snyder states in her Amended Complaint that she was a "sergeant." (Am. Compl. 3.) It is unclear to the Court at this stage whether the positions of "sergeant" and "deputy sheriff" are synonymous or distinct. However, the Court need not resolve the factual question to decide Defendants' Motion.

[4] The Board also cites *Ridgeway v. Union County. Comm'rs*, 775 F.Supp. 1105, 1110 (S.D. Ohio 1991), in support of its claim that the Board must be dismissed because the Sheriff appoints deputy sheriffs rather than the Board. In *Ridgeway*, the court concluded that the County Commissioner defendants could not be liable under a respondeat superior theory for 42 U.S.C. § 1983 violations committed by a Sheriff's department. *Id*. In so ruling, the court noted that under Ohio Rev. Code § 311.04, the Sheriff has sole authority to appoint deputy sheriffs. *Id*. However, *Ridegeway* does not address the question of whether a county board of commissioners could be viewed as an employer as defined in Title VII and, thus, does not speak to the question at issue in the Board's Motion.

capacity are sufficient to state a claim against the Sheriff's Office. Snyder agrees that a suit against the Sheriff in his official capacity is sufficient to state a claim against the office. However, she argues that the Sheriff's Department is properly subject to suit under Title VII because it meets the statutory definition of an employer and should not be dismissed from the case.

Under Federal Rule of Civil Procedure 17(b)(3), an entity's capacity to be sued is determined by "the law of the state where the court is located." Under Ohio law, a sheriff's department is not a legal entity subject to suit. *Petty v. County Of Franklin*, 478 F.3d 341, 347 (6th Cir. 2007); *accord. Batchik v. Summit County Sheriff's Dep't*, No. 13783, 1989 WL 26084, at *2 (Ohio Ct. App. Mar. 15, 1989) (county sheriff not sheriff's department was the real party in interest); *Pugh v. Allen County Sheriff Dep't*, No. 3:06 CV 3080, 2007 U.S. Dist. Lexis 87898, at *7 (N.D. Ohio Nov. 28, 2007) (sheriff's department is not a legal entity and cannot be sued) (collecting cases). As the capacity of an entity to be sued is based on a Federal Rule of Civil Procedure, this legal principle is not limited to Section 1983 suits, as Snyder argues, but applies equally to Title VII cases. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 314 (5th Cir. 1991) (Title VII context); *Castle v. Sullivan County*, No. 2:06-CV-138, 2008 WL 2887173, at *3 (E.D. Tenn. July 23, 2008) (same). Therefore, the Sheriff's Department's motion to dismiss all claims against it is **GRANTED**.

As both parties agree, however, "individuals sued in their official capacity stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003). Snyder's complaint names Sheriff Thompson in his official capacity. *See Petty*, 478 F.3d at 347 (Sheriff himself subject to suit). Therefore, this action is equivalent to a suit against Belmont County, the

government entity that employed Sheriff Thompson. *Alkire*, 330 F.3d at 810-811.
Consequently, the Court's dismissal of the Sheriff's Department as a named party has little practical effect on this case. The Sheriff remains a party in his official capacity.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (Doc. 23) is **DENIED in PART and GRANTED in PART.**

**IT IS SO ORDERED.**

<u>**s/Algenon L. Marbley**</u>
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT**

**Dated: February 23, 2009**